UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CANDY S.,

          Plaintiff,

    v.                                                   **DECISION AND ORDER**

                                                               20-CV-1053S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.        Plaintiff Candy S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her applications with the Social Security Administration on December 22, 2016.  Plaintiff alleged disability beginning December 6, 2016, due to migraine headaches, post-traumatic stress disorder ("PTSD"), obesity, a history of substance abuse, depression, and anxiety.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On December 21, 2018, ALJ William Weir held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Allison Reno appeared and testified.

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

(R.[2] at 38-73.)  At the time of the hearing, Plaintiff was 39 years old, with a high school education (R. at 23).  She had past relevant work as an inventory clerk (medium exertion work, performed as light work) and retail salesclerk (light work) (R. at 23).

4. The ALJ considered the case *de novo* and, on March 18, 2019, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 24, 27.)  Plaintiff filed a response on March 3, 2022 (Docket No. 32), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **granted**, and Defendant's Motion is **denied**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's March 18, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

3

> or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of December 6, 2016. (R. at 19.) At Step Two, the ALJ found that Plaintiff has the following severe impairments: migraine headaches, PTSD, obesity,

4

a history of substance abuse, depression, and anxiety.  Id. at 19.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except Plaintiff would need customary two breaks a day and one lunch; she could have occasional contact with the general public, frequent contact with supervisors and coworkers; further limited to simple, repetitive one and two-step tasks; work does not involve complex work; no more than one change in general job location or task per day.  (R. at 21.)

13. At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 23.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 24-25.)  The ALJ found that Plaintiff's ability to perform light work was impeded by additional limitations.  As a result, the ALJ sought the opinion of the vocational expert based upon a hypothetical claimant with Plaintiff's age, education, job skills and work experience.  The expert opined that such a claimant could work as cafeteria attendant or folder (R. at 24).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 24, 25.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ based the mental RFC upon his lay judgment rather than support from medical or psychological opinions.  The ALJ gave detailed RFC findings based upon his lay findings.  Finally, the ALJ failed to account for her migraine headaches

in the physical RFC, although finding they were severe impairments at Step Two. For the reasons that follow, this argument is adopted.

15. First, Plaintiff argus that the ALJ gave little weight to medical opinions in the record or Plaintiff's GAF scores (R. at 22-23), thus making his subsequent findings solely upon his lay judgment (Docket No. 24, Pl. Memo. at 14).

16. On October 6, 2016, Plaintiff was hospitalized for severe mental illness and self-harming behavior. On admission, Plaintiff had a GAF score of 35 to 40. (R. at 305; Docket No. 24, Pl. Memo. at 5-6.) At her discharge on October 11, 2016, Plaintiff's GAF score was 55 to 60 (R. at 301).

17. The ALJ gave these GAF scores little weight because various reasons may be represented in the GAF scores (such as loss of employment, medical or financial difficulties) "which are not necessary factors in the disability evaluation" (R. at 23).

18. Chelsea Kendra, DNP, in her physical assessment of Plaintiff, noted Plaintiff's bipolar disorder, PTSD, generalized anxiety and depression, and borderline use of cannabis (R. at 370). Ms. Kendra made a mental capacity assessment, noting that Plaintiff had moderate limitation in maintaining attention and concentration for extended periods, her ability to complete a normal workday without interruptions from psychologically based symptoms, her ability to complete a normal workweek without interruptions and that she struggles with attention due to anxiety (R. at 372, 373). She observed moderate limitations for Plaintiff's ability to interact appropriately with the public due to her anxiety (R. at 373). Ms. Kendra then noted Plaintiff's anxiety impacts Plaintiff's ability to use public transportation, thus a marked limitation for travel to unfamiliar places or using public transportation (R. at 374). Ms. Kendra found that Plaintiff's substance

abuse was not applicable, and she had the ability to voluntarily control the use of substances (R. at 374).

19.     The ALJ discussed Ms. Kendra's opinion and said that this opinion did not make specific findings on examination to support the limitations Ms. Kendra found (R. at 23).

20.     Plaintiff objects that the ALJ gave little weight to the evaluation of state agency psychologist Dr. D. Miller (R. at 101, 109) while disregarding the state agency evaluator Dr. A. Dipeolu (R. at 102, 110; Docket No. 24, Pl. Memo. at 8, 14-15).  Both doctors, however, did not render a mental RFC because Plaintiff did not attend consultative examinations (R. at 101, 110).

21.     Plaintiff then argues that the record was incomplete and the ALJ had the duty to complete it (Docket No. 24, Pl. Memo. at 15).

22.     This lack of evaluations from these psychologists appears to be a gap in the evidence, but Plaintiff has the burden of providing evidence, 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (see Docket No. 27, Def. Memo. at 10).  Plaintiff did not attend an examination, precluding findings by these doctors.

23.     The remaining opinion evidence is from a treating source's assessment and Plaintiff's GAF scores during one hospitalization.  As the ALJ observed, the GAF scores could have resulted from various causes.

24.     The ALJ found that, despite Plaintiff's history of cutting and suicidal ideations, Plaintiff reported stable moods (R. at 23).  It is unclear how the ALJ arrived at this finding.  While this Court defers to the ALJ's finding of conflicts in evidence (see Docket No. 27, Def. Memo. at 12), the ALJ still needs to identify the evidence relied upon

to make its findings. Concluding stability here is based on the ALJ"s lay opinion that requires an evidentiary basis and was erroneous absent that evidence. Plaintiff's Motion (Docket No. 24) on this ground is granted.

25. Plaintiff further objects that the ALJ rendered a detailed RFC that Plaintiff could have occasional contact with the public, frequent contact with supervisors and coworkers, and limited to simple repetitive one and two-step tasks that is not tethered to substantive evidence or medical opinion (Docket No. 32, Pl. Reply Memo. at 4-5).

26. Ms. Kendra observed that Plaintiff had moderate difficulty in interaction with the public (R. at 373). This is the source for restrictions in the mental RFC for contact with the public. There is no evidence, however, how Plaintiff interacts with supervisors or coworkers despite her anxiety.

27. A possible source for the ALJ's interaction finding may be stated in earlier Steps in the disability analysis, although a more detailed assessment is required for Step Four (R. at 21). At Step Two, the ALJ found Plaintiff had only mild limitation in interaction with others based upon ALJ's finding that Plaintiff lived independently and with a friend (R. at 20, 653, 666), but faced eviction on February 6 and March 29, 2018, when Plaintiff was in the emergency room (R. at 666).

28. The ALJ made no finding to support the detailed mental RFC. The error is the lack of evidence or medical opinion to allow this Court to determine if substantial evidence exists for Plaintiff's fundamental limitation (see Docket No. 32, Pl. Reply Memo. at 6, quoting Piper v. Comm'r, No. 18CV1311, 2020 WL 4499530, at *4 (W.D.N.Y. Aug. 4, 2020) (Geraci, C.J.) (quotation omitted)).

29. Finally, Plaintiff objects to the ALJ not adding her migraines to her physical RFC (Docket No. 24, Pl. Memo. at 20-23). Defendant argues that omission of migraines from the RFC was proper because her headaches did not preclude Plaintiff from performing simple, light work with limited interactions (Docket No. 27, Def. Memo. at 7-8; R. at 21).

30. At Step Two, the ALJ found migraines were a severe impairment (R. at 19) but did not mention this impairment in later Steps or consider it at Step Five as an additional limitation from performing light work. Defendant argues that the ALJ could make a nuanced finding about the application of severe impairment of migraines (Docket No. 27, Def. Memo. at 9). The ALJ, however, did not so find. The Defendant's post hoc rationalization cannot support the ALJ's failure to consider the impact of Plaintiff's migraines. Plaintiff's objection on this ground, and her Motion for Judgment on the Pleadings (Docket No. 24) is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 24) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 27) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     May 9, 2022
           Buffalo, New York

                                             s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                       United States District Judge